```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHRISTOPHER BARRELLA

                    Plaintiff,
                                                           MEMORANDUM OF
              -against-                                    DECISION AND ORDER
                                                           12-cv-0348 (ADS)(WDW)
VILLAGE OF FREEPORT, and ANDREW
HARDWICK, as both mayor and in his
individual capacity,
                    Defendants.
----------------------------------------------------------X
```

**APPEARANCES:**

**Fugazy & Rooney LLP**
*Attorneys for the Plaintiff*
126 Glen Street
Glen Cove, NY 11542
    By:    Amanda M. Fugazy, Esq.
             Paul P. Rooney, Esq.
             Sheryl L. Maltz, Esq., Of Counsel

**Jaspan, Schlesinger & Hoffman, LLP**
*Attorneys for the Defendants*
300 Garden City Plaza
Garden City, NY 11530
    By:    Christopher D. Palmieri, Esq.
             Stanley A. Camhi, Esq.
             Jessica M. Baquet, Esq., Of Counsel

**SPATT, District Judge.**

On January 25, 2012, the Plaintiff Christopher Barrella, a Lieutenant in the Village of Freeport Police Department, filed the Complaint seeking damages arising out of the Defendants' alleged discrimination during the Plaintiff's employment in violation of Title VII, 42 U.S.C. § 1981 *et seq.*, 42 U.S.C. § 1983 *et seq.*, and New York State Human Rights Law. The Plaintiff asserts that the Defendants failed to promote him to the position of Chief of Police, or another Command Staff position,

1

notwithstanding his superior qualifications and number one (1) score on the Civil Service Chief of Police Exam, because of his race as a non-Hispanic White.

Approximately seventeen (17) months prior to the Plaintiff Barrella filing his complaint, Debbie Zagaja, another non-Hispanic White Lieutenant with the Village of Freeport Police Department, filed a complaint against the Village of Freeport and Andrew Hardwick alleging primarily identical claims predicated upon most of the same facts (the "Zagaja litigation").  Zagaja v. Inc. Village of Freeport, 10-CV-3660 (JFB)(WDW).  According to Barrella's counsel, the two Plaintiffs have nearly identical claims because Defendant Hardwick selected the current Chief of Police, Miguel Bermudez, a Hispanic male, over both Zagaja and the Plaintiff.  In this regard, Zagaja and the Plaintiff in this case both predicate their failure to hire claims, in large part, upon the elaborate measures the Defendants allegedly took to make Bermudez the Chief of Police.  These actions included proposing amendments to the law and suing the Nassau County Civil Service Commission.  In addition, the Plaintiff points to the substantial disparities in the salaries and hiring/firing of minority Village employees compared to Non-Hispanic White Village employees.  Accordingly, Barrella's counsel contends that the fairly extensive discovery required in both cases is basically identical.

On October 11, 2012, the Defendants' counsel in this case received a copy of a subpoena that the Plaintiff's counsel served on Debbie Zagaja c/o Valli, Kane & Vagnini, LLP.  The Valli law firm represents Ms. Zagaja in the "Zagaja litigation".  The subpoena requires the Valli firm to turnover to the Plaintiff's counsel "All deposition transcripts and discovery produced and received in the action Zagaja v. Village of Freeport, et. al., 10-cv-3660 (E.D.N.Y.)".  On October 12, 2012, the Defendants' counsel wrote a letter to United States Magistrate Judge William D. Wall, requesting that the Court quash the subpoena pursuant to its authority under Fed. R. Civ. P. 45(c)(3).  According to the Defendants, the discovery sought from the Zagaja litigation was done subject to a stipulated protective order and should

2

not be produced by Zagaja, who is bound by that order. On the other hand, Barrella argued that he is entitled to all discovery in the Zagaja action "to secure the just, speedy and inexpensive determination" of this action. In other words, obtaining the Zagaja discovery would save him the time and expense of conducting similar discovery in his own action.

On October 22, 2012, Judge Wall granted the motion to quash. He explained that while obtaining the fruits of discovery in the earlier action might well save Barrella time and money, that does not entitle him to documents and information governed by the protective order, which specifically provided that all "Discovery Material produced in connection with this Action shall be used solely for the purpose of prosecuting or defending this Action and nor for any other purpose, including, without limitation, . . . any other litigations . . . ." (DE 14, Exh. B, ¶13.) Accordingly, Judge Wall found that "Barrella can and should conduct his own discovery." (DE 16.)

On November 5, 2012, the Plaintiff filed a motion before this Court pursuant to Fed. R. Civ. P. 72(a) to set aside Judge Wall's order granting the Defendants' motion to quash, and directing non-party Debbie Zagaja to produce all deposition transcripts and discovery produced and received in the action Zagaja v. Village of Freeport, et al., 10-cv-3660 (E.D.N.Y.).

When reviewing a Magistrate Judge's decision on a non-dispositive matter, the Court will modify or set aside any portion of the magistrate's order found to be "clearly erroneous or contrary to law." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); United States v. Isiofia, 370 F.3d 226, 232 (2d

3

Cir. 2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Catskill Dev., L.L.C. v. Park Place Entrn't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

The Plaintiff argues that under Fed. R. Civ. P. 1, the Court should permit the Plaintiff to obtain the Zagaja discovery because of practical considerations of judicial efficiency and economy. In particular, he contends that the law requires that the Federal Rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. However, while all federal rules should be viewed through this lens and courts should always be mindful of achieving the most efficient litigation possible, this Rule does not permit a party to obtain discovery obtained in a separate lawsuit that is subject to a protective order, simply because that party maybe does not wish to spend his own time or money.

"Certainly, is has been the case that courts asked to issue discovery orders in litigation pending before them . . . have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified." Tucker v. Ohtsu Tire & Rubber Co., Ltd., 191 F.R.D. 495, 499–500 (D. Md. 2000). Thus, while courts have permitted protected discovery to be disclosed in separate litigation, they have done so under particular and distinguishable circumstances.

For instance, the Plaintiff largely relies upon Carter-Wallace, Inc. v. Hartz Mountain Industries, 92 F.R.D. 67 (S.D.N.Y. 1981), where the court compelled the production of transcripts of depositions taken by a third-party in a separate litigation against the same defendant, which was based on similar allegations. There, Carter-Wallace ("CW") sought deposition transcripts taken by A.H. Robins Company, Inc. ("Robins") in a recently settled litigation against Hartz. In that case, Hartz objected to C-

4

W's demand, partly on the ground that it was bound by a protective order entered during the course of that action.

However, the protective order in that case said that any documents and information disclosed or produced by a party was to be used solely for preparation and use at the trial of that action, and that it should "not be used or disclosed by the *receiving party* for any other purpose." The Carter-Wallace court ruled that the discovery request was explicitly directed at Hartz, the party that originally controlled the evidence and was the source of the information. Thus, Hartz was not bound by an order which by its own terms prohibits disclosure only by "the receiving party." In other words, the Court found that the defendant could not rely on the protective order because it was not the "receiving party" with respect to information disclosed by its own employees. Thus, Carter-Wallace hinged on the finding that the protective order was one sided and that Hartz was not the "receiving party". See Tucker, 191 F.R.D. at 501 ("Second, the court should consider the identity of the party from whom discovery is sought. In this regard, it should be noted that discovery is sought in this case not from the party against whom the obligations of the Texas Order apply, the Hernandezes, but instead from the source of those documents, Ohtsu. Thus, compelling the production of the documents sought directly from Ohtsu, as was noted by the Court in Carter–Wallace, supra, does not at all undermine the authority of the Order issued by the Texas court.").

Here, Barrella is attempting to gain disclosure from the "receiving party", in that he is attempting to gain information and materials *not* from the source of the information. The Plaintiff is essentially trying to obtain deposition transcripts and information stemming from the Village's employees, not from the Village but from the plaintiff in the Zagaja lawsuit.

Thus, the situation here is quite different than as in Carter–Wallace, where there was something unsettling about the notion that the *source* of the information might forever be insulated from producing

5

discovery in any other actions, by virtue of having once produced it in a protected fashion in another case. Here, Barrella seeks to enforce a subpoena directed to the plaintiff in the Zagaja litigation, not the defendants, so that he can obtain information produced by the defendants in that action from Zagaja instead of from the defendants themselves. This is a critical distinction.

Moreover, it is worth noting that the demand at issue in Carter-Wallace was more narrowly tailored than Barrella's demand for the production of "all documents" and "all transcripts" produced in the Zagaja litigation. The Carter-Wallace Court ordered defendant to produce only the transcripts of its employees' depositions, not the transcript of every single deposition conducted in that case as well as every single document, although the only depositions conducted here were of Village employees.

As another example, in LeBlanc v. Broyhill, 123 F.R.D. 527 (W.D.N.C. 1988), the court was asked to permit discovery in a pending case which, if granted, would modify a protective order earlier issued by a state court. Id. at 530. It did so, but only because it determined that the party seeking the discovery had not been able to intervene in the state action before it was voluntarily dismissed, and recognized that a "practical solution" was needed. Id. at 531.

Again, the circumstances here are distinguishable. Undoubtedly, "the court should consider whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the plaintiffs if they are required to file a new action in the Texas court simply to seek modification of the Order issued there." Tucker, 191 F.R.D. at 501. In this regard, the Plaintiffs have already filed a motion to intervene to modify or vacate the protective order in the Zagaja litigation. While Judge Wall has already denied the motion, it is still currently pending before the district judge. As the Zagaja litigation is still pending and the motion has already been briefed, the Court does not find that it would require significant additional burden and expense to the Plaintiff to seek modification of the Order issued there.

As a final matter, the Plaintiff points out that the <u>Zagaja</u> parties filed hundreds of pages of <u>Zagaja</u> discovery documents marked "Confidential" along with their summary judgment motion papers. Accordingly, he contends that the Defendants cannot claim any legitimate interest in keeping the <u>Zagaja</u> documents confidential when the exact documents are already entered into the public record. However, it appears to the Court that contrary to the Plaintiff's suggestion, the exhibits that were filed along with the summary judgment in the <u>Zagaja</u> case were in fact filed under seal. (<u>Zagaja</u>, DE 29-2.) After receiving the motion papers, United States District Judge Joseph F. Bianco held a conference with the parties and instructed them to re-file the motion papers and redact certain portions instead of keeping the entire motion under seal. Judge Bianco issued this direction so that he could reference the evidence in his decision. The parties complied with this directive. This Court does not find that this compliance waives the provisions of the Protective Order.

Therefore, the Court finds that Judge Wall's order is not "clearly erroneous or contrary to law". Accordingly, the objections to Judge Wall's order quashing the subpoena are denied.

**SO ORDERED.**

Dated: Central Islip, New York
December 8, 2012

                     ___/s/ Arthur D. Spatt_____
                       ARTHUR D. SPATT
                     United States District Judge